JOSEPH W. JOHNSTON,

*Plaintiff and Respondent,*

vs.

THOMAS VUKELIC,

*Defendant annd Appellant, and*

MRS. THOMAS VUKELIC, his wife,

*Defendant.*

(No. 2393; January 24th, 1950; 213 Pac (2d) 925).

6

For the defendant and appellant the cause was submitted upon the brief and also oral argument of C. A. Brimmer and C. L. Bates, both of Rawlins, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief and also oral argument of John J. Hickey of Rawlins, Wyoming.

8

## OPINION

KIMBALL, Justice.

The case involves a highway accident in which plaintiff, Joseph Johnston, a pedestrian, was injured by contact with an automobile driven by Thomas Vukelic, defendant. In plaintiff's action for damages, the trial, some five years after the accident, was to the court without a jury, and the judgment was for plaintiff and against the appealing defendant on a general finding.

We notice first a contention by appellant that the judgment is erroneous because of a disagreement between the allegations in the petition and the proof. Vukelic's wife was a co-defendant, and it was alleged in the petition that she "as agent and servant and under the control and direction of her husband" was driving the automobile at the time of the accident which was caused by her various alleged negligent acts and omissions in operating the vehicle. The husband and wife

filed a joint answer denying generally the allegations of the petition, and pleading that plaintiff's own negligence was a proximate cause of his injury. Early in the trial, both defendants were called as witnesses by plaintiff and examined "as if under cross-examination," as permitted by statute. § 3-2604, C. S. 1945. Each testified that Thomas Vukelic was driving the car, and there was no substantial evidence to contradict them on the point. The judgment for plaintiff was against the husband alone. It seems reasonable to infer from the record that the two defendants were the only witnesses who knew that Thomas Vukelic was driving at the time of the accident, and that plaintiff's mistake in alleging that Mrs. Vukelic was driving was the result of an assumption based on the fact that it was she who was at the wheel when the car was driven away after the accident.

We cannot hold that this difference between allegation and proof was a failure of proof or even a material variance. The statute provides that there is a failure of proof when the allegation of the claim to which the proof is directed is unproved, not in some particular or particulars only, but in its general scope and meaning. § 3-3203, C. S. 1945. The plaintiff's grievance, of which defendants were fully apprised, was that he had been injured by the negligent driving of the automobile. The allegation that the wife was driving was not proved, and the judgment in her favor established that there was a failure of proof as to her. But we cannot hold that the variance between the allegation that appellant was directing and controlling the driver and the proof that he was the actual driver, was a failure of proof as to him. See Greenburg v. Gorvine, 279 Mass. 339, 181 N. E. 128; Trawick v. Chambliss, 42 Ga. App. 333, 156 S. E. 268; Avent v. Tucker, 188 Miss. 207, 194 So. 596, 601.

The statute declares that no variance between allegation and proof shall be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defence. § 3-3201, C. S. 1945. In this case there was no surprise unless to the plaintiff, and appellant makes no claim of prejudice in maintaining his defense on the merits. When a variance is immaterial the court may direct the fact to be found according to the evidence (§3-3203) and the judgment will not be disturbed because no formal amendment was made. Kuhn v. McMay, 7 Wyo. 42, 58, 49 Pac. 473; Chicago B. & Q. R. R. Co. v. Pollock, 16 Wyo. 321, 329, 93 Pac. 847. Another statute (§3-1705) directs that: "The court in every stage of an action must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." See Claughton v. Johnson (on petition for rehearing), 47 Wyo. 536, 41 P. 2d, 527.

In this connection appellant cites cases holding, in effect, that where two defendants are joined in an action for the same injury a judgment against one and in favor of the other is inconsistent if the liability of one cannot exist without the liability of the other. See Restat. Torts. § 883; Restat. Judgments, § 106, Illustration 4g. That principle might have been applicable in the case at bar if the proof had been that the wife was the driver, as alleged in the petition, and the judgment in her favor had resulted from a finding that she was not negligent. References below to defendant will mean the appealing defendant.

Contentions that go to the merits require a consideration of the evidence bearing on questions: (1) of defendant's negligence, (2) of plaintiff's contributory

negligence, and, if both were negligent, (3) defendant's liability under the last clear chance doctrine.

The collision was on the Lincoln highway where it runs east and west, level and straight, through the property of an oil refinery company in the town of Sinclair, formerly Parco. The refining plant, north of the highway, includes a structure called the 680 still. South of the still, 15 or 20 feet north of, and parallel with, the highway there is a wire fence in which there is a gate through which the still can be approached from the south. Some 100 feet or more south of the highway there is a warehouse. The collision occurred as plaintiff, shift foreman for the refinery company, was walking northwesterly from the warehouse, across the road toward the still. The Vukelic family (appellant, his wife and three children), in a Chevrolet 4-door sedan, were traveling east on way to their home at Omaha, Nebraska. The parents were on the front, the children on the rear seat.

Plaintiff, when asked a question about the "street" at the place of the accident, said "it is not a street, it is a highway," evidently meaning that it lacked the usual features and surroundings of a city or town street. There was no evidence of curbs or sidewalks along it, or of intersecting streets or pedestrian cross walks. Adjacent property evidently was not divided into blocks. The only nearby structures referred to were the 680 still and the warehouse. Between them there was no crosswalk or beaten path, and the testimony indicates that the persons who had occasion to cross the road at that place were the plaintiff and other refinery employees (one witness said foreman only) who had business at the warehouse. Plaintiff testified that he crossed there four or five times a month. The roadway was oil-surfaced and free of defects. Its width was not proved.

The time of the accident was 11 o'clock in the forenoon of an August day bright with sunshine. Conditions affecting visibility were perfect. Motor traffc was light. Defendant's car and one being driven in the other direction by witness Edmonson were the only vehicles mentioned as having been on the roadway at the time and place of collision.

Plaintiff was fifty years of age, intelligent, physically capable and thoroughly familiar with the place where he was injured. By the collision he was knocked unconscious, and on the trial testified that he had no recollection of anything that happened from the time he was at the warehouse until he regained consciousness in a hospital.

The collision was seen by three refinery employees who were witnesses for plaintiff. We shall lump their testimony in order to state briefly the facts that seem material on the negligence issues, as related by one or more of them. They were working near the 680 still, about 80 feet north of the place of the collision. They saw the defendant's car coming from the west and estimated its speed, at from 30 to 40 miles an hour. The driver was "looking up at the refinery, north of the highway." They saw plaintiff walking northwesterly from the warehouse toward the still. He continued to walk, and the car continued straight ahead, until the impact which was at the right front fender of the car. Plaintiff seemed to come up over the hood or fender of the car and hit the right-hand side of the windshield. He then "toppled over" on the south side of the road where he lay unconscious just on the edge of the oiled surface until he was taken away in an ambulance. Plaintiff was walking just before the collision. He may have hesitated or lessened his speed as he stepped upon the roadway, but the witnesses could not tell

which way he was looking. After the impact, the car was stopped within a distance estimated at from 10 to 30 feet.

Another plaintiff's witness, a garage mechanic who had examined appellant's car after the accident, testified that the right front fender and the right side of the windshield were damaged. The damage to the fender was a dent above the center of the right front wheel. He observed no damage to the hood.

There was a conflict in the testimony in regard to the speed of the automobile as it was driven to the place of the collision. Appellant, his wife and defense witness Edmonson testified that the speed was not greater than 20 miles an hour. On that point, the trial court had for consideration the undisputed testimony that appellant stopped the car thirty feet or two car-lengths beyond the place of collision, and the opinion of a highway patrolman of more than five years experience who, as a witness for defendants, testified that under favorable conditions an automobile being driven at the rate of 20 miles an hour will travel 43 feet while the average driver is making an emergency stop.

Appellant and his wife denied that they were looking at the refinery north of the highway as they approached the place of the accident, but admitted that they were looking in that direction watching a man, called the tramp, walking east, and an automobile (evidently Edmonson's) driven west, on the north side of the highway. They testified that they did not see plaintiff approaching or on the highway, and that the impact that shattered the right side of the windshield came without warning, while their car was being driven straight ahead. Appellant, when asked if he swerved the car to the left in trying to miss plaintiff, replied,

"Not that I knew it; not that I remember." He testified, however, that after the crash, his car was over the center of the highway.

Edmonson, as witness for defendants, testified that he was driving his car west on the north lane of the road. As he slowly came to the scene of the accident, he saw plaintiff walking from the warehouse, and appellant's car approaching from the west on the south lane of the highway. We quote briefly parts of his testimony in regard to the actions of plaintiff, and movements of the car. Plaintiff "was looking directly at me and coming right on, and I saw the other car coming and began to wonder if he wasn't going to look around and see it, and he didn't . . . . He walked right into the side of (the car) about the back of the hood." The car before the accident was "about the center of the south side of the line in the center." At the time of the accident, the car "swerved out over the center of the road, made a short swerve to miss this man and almost stopped . . . . (plaintiff) wasn't over ten feet behind the car when it almost stopped, and then just pulled down slow to the edge and parked." At the time of the impact plaintiff "was about the center of the highway," and the car was "straddle the center."

We think there was evidence sufficient to justify the trial judge in finding that defendant, as he approached the place of the accident, was negligent in looking to the left instead of keeping a lookout ahead. Though plaintiff was not in front of the car, it may reasonably have been found that he was near enough to have been seen by the driver in time to have taken some action to avoid the accident, if he had been looking ahead along the roadway. See 60 C. J. S. Motor Vehicles, § 287.

The relative duties of pedestrian and automobile driver under conditions disclosed by the evidence are stated in section 60-521, C. S. 1947. It is provided in paragraph (a) "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway." Undisputed evidence shows that plaintiff was crossing the roadway where there was no marked crosswalk and no intersection. The same section of the statutes, in paragraph (d), provides further that "Notwithstanding the provisions of this section every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway."

Conceding that we cannot disturb the finding that defendant's negligence was a cause of plaintiff's injury, we next consider the evidence tending to prove plaintiff's conduct at the time, in order to determine whether it required a finding against him on the issue of contributory negligence.

The general finding for plaintiff does not necessarily imply a finding in his favor on this issue. His contributory negligence would not prevent a recovery, if there was evidence to support the judgment under the doctrine of the last clear chance, which will be considered later.

Contributory negligence is defined as conduct on the part of a plaintiff which falls below the standard to which he should conform for his own protection and which is a legally contributing cause, co-operating with the negligence of the defendant in bringing about

plaintiff's harm. Restat. Torts § 463. The standard of conduct to which he should conform is the standard to which a reasonable man would conform under like circumstances. Id. §464. The words "reasonable men" denote a person exercising those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others. § 464, supra, comment a.

The burden of proving plaintiffs' contributory negligence was on the defendant, and a finding against defendant on the issue cannot be distributed in this court unless we can say, as stated in Ries vs. Cheyenne C. & T. Co., 53 Wyo. 104, 118, 79 P. 2d, 468, 473, that "reasonable men can draw but one inference which points unerringly to such negligence." However, this rule in regard to the burden of proof does not necessarily mean that defendant must produce evidence on the issue. Plaintiff's own evidence may clearly show his own negligence. See Cook v. C. B. &. Q. Ry. Co., 18 Wyo. 43, 102 P. 657. This frequently happens in collision cases, where the plaintiff in making out a prima facie case on the issue of defendant's negligence must show his own conduct at the time he was injured.

We think undisputed evidence does not permit escape from the conclusion that plaintiff's failure to exercise due care was a legally contributing cause of his injury. He was crossing the roadway at a place where he was required by statute to yield the right-of-way to appellant's car, and walked into the side of the car without taking any precaution for his own safety. He was under no less a duty to keep a lookout, and had no less an opportunity to avoid the accident, than appellant. He came in contact with the fender after the front part of the car, for the distance from the

front bumper to the center of the front wheel, had gone by. The car would have missed him if he had stopped before he took the last step.

There are authorities stating or holding that a pedestrian who walks or runs into the side of a car is guilty of contributory negligence as a matter of law. See Estill v. Berry, 193 Wash. 10, 74 P. 2d 482, 484, and texts and cases cited. These authorities seem to prescribe a standard of conduct to which a reasonable man would conform except in cases where there is evidence of some condition affecting his ability to protect himself. See Kellum v. Rounds, 195 Wash. 695, 81 P. 2d 783. In the case at bar we have the testimony of four eye witnesses, three of whom testified for plaintiff. No one testified to any fact tending to show that plaintiff did not walk blindly into the car.

As stated above, we cannot be sure from the general finding that the trial judge had an opinion different from ours on the issue of contributory negligence. The briefs in this court contain statements which suggest the possibility that the trial judge found for plaintiff on the ground that his negligence "had come to an end," and the briefs discuss at some length the last clear chance doctrine, to which a plaintiff need not resort unless he was negligent.

The so-called last clear chance doctrine which permits a negligent plaintiff to recover from a negligent defendant in certain cases, is stated in two sections (479, 480) of the Restatement of the Law of Torts. Section 479 states the rule applicable only when the plaintiff, immediately preceding the harm, is unable to avoid it by the exercise of reasonable vigilance and care.

In the exhaustive notes of Mr. Parmele (92 A. L. R. 47, 119 Id. 1041, 171 Id. 365) the cases to which sec-

tion 479 of the Restatement refers, fall into the first or third categories of Parmele's classification. Section 480 of the Restatement states the rule under which a plaintiff, who could have made timely discovery of his peril if he had been on the alert (Parmele's second and fourth categories) can recover notwithstanding his negligent inattention. This rule, in the language of section 480 of the Restatement is that:

"A plaintiff who, by the exercise of reasonable vigilance could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant

(a) knew of the plaintiff's situation, and

(b) realized or had reason to realize that the the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and

(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."

We accept this as a correct statement of the rule to to be followed in the case of an inattentive plaintiff.

What we have said on the contributory negligence issue makes clear our opinion that plaintiff "by the exercise of reasonable vigilance could have observed the danger created by defendant's negligence in time to have avoided harm therefrom." The burden of proof was on the plaintiff to establish the facts, stated in clauses (a) (b) and (c), necessary to permit a recovery. Note 159 A. L. R. 714; Jenkins v. Johnson, 186 Va. 191, 42 S. E. 2d, 319; Parks v. Airline Motor Coaches, 145 Tex. 44, 48, 193 S. W. 2d 967.

The testimony of plaintiff's witnesses contains nothing to show that defendant knew of plaintiff's situation before the accident, but on the contrary, evidently to support the allegation that defendant failed to keep a lookout, had a tendency to show that defendant was looking toward his left as he approached the plaintiff on his right. Defendant testified that he knew nothing of plaintiff's presence on the highway until he was struck. The only doubt on that point is created by testimony of the defendant himself that after the crash his car was over the center of the highway, and the testimony of defense witness Edmonton that defendant's car was "straddle the center" of the highway after having been swerved to the left by the driver in an effort, as the witness supposed, to miss the plaintiff. This tesimony as to the swerving of the car has no support in the testimony of plaintiff's witness, but we assume that plaintiff may rely on it as tending to show that the defendant saw plaintiff immediately before he was struck. It was not substantial evidence to support a finding that defendant saw plaintiff in time to realize his inattention and avoid harming him, as required by the rule as stated in section (480) (b) (c) of the Restatement. It was said by this court in O'Malley v. Eagan, 43 Wyo. 233, 257, 2 P. 2d 1063, 1071, that the last clear chance doctrine "can never apply where the party charged is required to act instantaneously, and the injury cannot be avoided by the application of all means at hand after the discovery of the peril . . . ". See, also, Reinecker vs. Lampman, 55 Wyo. 159, 168, 96 P. 2d 561, 564. It follows that there was no substantial evidence to support the judgment under the last clear chance doctrine.

The judgment must be reversed.

RINER, CH. J., and BLUME, J., concur.